**RECORD NO. 13-7575**

# IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

---

## BARTEL EVET DAVIS,

*Petitioner - Appellant,*

v.

## BRYAN WATSON, Warden,

*Respondent - Appellee.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT ALEXANDRIA

---

**OPENING BRIEF OF APPELLANT**

---

Jonathan Shapiro
Washington and Lee University
  School Innocence Project
1 Denny Circle
Lexington, Virginia 24550
(540) 458-8503
shapiroj@wlu.edu

*Counsel for Appellant*

Meghan Shapiro
Louisiana Capital Assistance Center
636 Baronne Street
New Orleans, LA 70113
(703) 915-9594
Shapiro.meghan@gmail.com

*On Brief*

**LANTAGNE LEGAL PRINTING 801 East Main Street Suite 100 Richmond, Virginia  23219 (804) 644-0477**
**A Division of Lantagne Duplicating Services**

# Table of Contents

Page

Table of Authorities ................................................................... iii

Jurisdictional Statement .............................................................1

Statement of Issues....................................................................1

Statement of the Case................................................................1

Summary of Arguments..............................................................6

Argument...................................................................................9

    I.  The Virginia Parole Board Is Violating *Graham* By
        Failing To Afford Davis – A Juvenile Sentenced To
        Life In Prison – A "Meaningful Opportunity To Obtain
        Release Based On Demonstrated Maturity And
        Rehabilitation" ..................................................................9

        A. The Holding in *Graham* ...................................................9

        B. *Graham* Applies To Davis ............................................. 11

        C. Davis Has Sufficiently Alleged That The Virginia Parole
           Board Is Violating *Graham* ............................................16

        D. *Burnette v. Fahey* Does Not Address The Specialized
           Issue Of Parole For Juveniles ......................................... 18

    II. Davis' Petition Was Timely And Not Procedurally
      Defaulted ..........................................................................20

        A. The Petition, Filed Within A Year Of The Decision In
           *Graham*, Was Timely ......................................................20

i

B.  The Petition Was Not Otherwise Procedurally Defaulted
    Because There Was No Independent And Adequate State
    State Procedural Bar ............................................................21

C.  Even If Defaulted, There Was Both Cause For And
    Prejudice From Davis' Failure To File Within The
    State Limitations Period ....................................................25

D.  Barring Davis' Claim Results In A Fundamental Miscarriage
    Of Justice ............................................................................29

Conclusion ............................................................................................30

Certificate of Compliance ....................................................................31

Certificate of Service ........................................................................ 31

Addendum ............................................................................................32

## Table of Authorities

Cases                                                                          Page


*Burnette v. Fahey*,
      687 F.3d 171 (4th Cir. 2012) .................................................................. *passim*

*Coleman v. Thompson*,
      501 U.S. 722 (1991)................................................................................23, 27

*Davis v. Warden*,
      CL-11003537 (Circuit Court for Alexandria, Virginia) ..........................5, 24

*Dretke v. Haley*,
      541 U.S. 386 (2004)........................................................................................29

*Enmund v. Florida*,
      458 U.S. 782 (1982)...................................................................................11, 12

*Graham v. Florida*,
      560 U.S. 48 (2010).................................................................................. *passim*

*Harmelin v. Michigan*,
      501 U.S. 957 (1991).......................................................................................29

*In re: Ronald Evans*,
      449 Fed. Appx. 284 (4th Cir. 2011) .............................................................21

*In re Sparks*,
      657 F.3d 258 (5th Cir. 2011) .........................................................................27

*Jackson v. Hobbs*,
      __U.S.__, 132 S.Ct. 2455 (2012) ............................................................. 14

*Jennings v. Parole Board of Virginia*,
      34 F.Supp. 2d 375 (ED Va. 1999)........................................................26, 27, 30

*Michigan v. Long*,
      463 U.S. 1032 (1983) .....................................................................................23

*Miller v. Alabama*,
    __U.S.__, 132 S.Ct. 2455 (2012) ...........................................................14, 29

*Moore v. Biter*,
    725 F.3d 1184 (9th Cir. 2013) .................................................... 21

*Murray v. Carrier*,
    477 U.S. 478 (1986)...........................................................................25, 27

*Penry v. Lynaugh*,
    U.S. 301 (1989)...................................................................................28

*Roper v. Simmons*,
    543 U.S. 551 (2005)...........................................................................10

*Rose v. Lee*,
    252 F.3d 676 (4th Cir. 2001) .........................................................25

*Teague v. Lane*,
    489 U.S. 288 (1989)......................................................................21, 28

*Tison v. Arizona*,
    481 U.S. 137 (1987)..........................................................................12

*Tyler v. Cain*,
    533 U.S. 656 (2001)..........................................................................28

*United States v. Frady*,
    456 U.S. 152 (1982)..........................................................................28

*Wolfe v. Johnson*,
    565 F.3d 140 (4th Cir. 2009) ........................................................16

| Statutes | Page |
|---|---|

28 U.S.C. § 2253(C)(2) ................................................................ 1

28 U.S.C. § 2254 .........................................................................1

28 U.S.C. § 2255(h) ...................................................................27

Code of Virginia § 8.01-654(A)(2) ....................................5, 20, 21

Code of Virginia § 8.01-654(B)(2) ...................................... 24, 25

Code of Virginia § 18.2-18 ........................................... 15

Code of Virginia § 53.1-165.1 ...................................................22

Code of Virginia § 53.2-251(C) .................................................25

Rules

Rule 22, Federal Rules of Appellate Procedure ................................................1

Rule 12(b)(6), Federal Rules of Civil Procedure .....................................16

Constitution

United States Constitution Amendment Eight ................................................*passim*

Other Authority

1-12 *Virginia Criminal Benchbook for Judges and
Lawyers*, Section 12.02(1) ..............................................................20

*Review for Release: Juvenile Offenders, State Parole
Practices, and the Eighth Amendment*, Sarah French Russell,
89 Indiana L.J. 373 (2014) ......................................................17

*The Boxer*, Simon and Garfunkel.................................................17

H.B. 6581, 2013 Gen. Assmb., Jan. Sess. (Conn. 2013) .........................................18

La. Rev. Stat Ann. Sec. 15:574.4 (Supp. 2013) ................................................18, 32

## Jurisdictional Statement

Davis, a Virginia prisoner in the custody of the Respondent, filed a petition for a writ of habeas corpus in the Eastern District of Virginia pursuant to Title 28 U.S.C. Section 2254.   The district court granted the Respondent's Motion to Dismiss and denied a Certificate of Appealability. This Court then granted a Certificate of Appealability under Rule 22, Fed. R. App. P. and Title 28 U.S.C. Section 2253(C)(2).  By Order of this Court, this brief was to be filed on or before April 1, 2014.  This brief is timely filed.

## Statement of the Issues

1.  Whether the petition was timely or procedurally defaulted.

2.  Whether, notwithstanding *Burnette v. Fahey*, 687 F.3d 171 (4th Cir. 2012), the Virginia parole authorities' application of parole considerations to juveniles sentenced to life in prison runs afoul of the Eighth Amendment.

## Statement of the Case

In 1983, Bartel Davis, then 16 years old[1], was charged with the crimes of murder, malicious wounding, statutory burglary, three counts of displaying a

---

[1] The habeas petition incorrectly stated that Davis was 17 at the time of the crimes. He was 17 when sentenced.

1

weapon in the commission of a felony, and two counts of robbery[2]. Davis had entered the victim's home along with his brother, Boggess Davis, aged 21, and Jeffrey Harris. As set forth in the Commonwealth's response to Mr. Davis' Motion for a Bill of Particulars:

> In the nighttime on [January 2, 1983], the defendant and two other individuals entered the residence of Martha Riche and Stephen Marston. The defendant demanded money from Mrs. Riche and Mr. Marston. One of the co-defendants, armed with a handgun, entered the premises last with Mr. Marston. The three individuals, Bartel Davis and the two co-defendants, proceeded to rob Mrs. Riche and Mr. Marston of their wallets, money, camera, watch and other personal belongings. The lights were turned out and immediately thereafter, a co-defendant shot and killed Stephen Marston, and then shot Mrs. Riche, seriously injuring her. . . . Bartel Davis was present and was assisting the others, to include demanding money, looking for property to steal, helping to shut the lights out, removing property of the victims, and helping to conceal the discovery of the perpetrators.

J.A. 11.[3] The incident was horrible, yet it is also true that Davis was not the shooter, did not intend death, and did not foresee that a life would be taken.

_____

[2] All the facts relating to Davis' conviction, as well as his prison record and the various actions of the Virginia Parole Board were alleged in the habeas petition, found at J.A. 8 through 30.

[3] The Commonwealth also provided the defense with the recorded interview of Mr. Harris, included in the trial court record. Harris told the police that Boggess Davis confessed the killings to him, that Boggess Davis had the gun entering the home, and that he saw Bogges Davis run from the home after the shooting still holding the gun. Finally, the Commonwealth prepared a Statement of Facts in support of

2

Tried as an adult, Davis entered guilty pleas to all eight counts with no plea agreement. On August 25, 1983, he was sentenced to life in prison plus a term of years.[4]

Now almost 49, Davis has been incarcerated for the past 32 years, two-thirds of his life. He has received numerous certificates of achievement in prison. He earned his GED. He has been steadily employed in a position that carries trust. Despite minor infractions early on, in the past 20 years, he has received not a single institutional infraction charge. J.A. 244-249. His only infraction for fighting was 26 years ago, when he was 22 years old. J.A. 12-13. Despite this excellent prison record, Mr. Davis has been denied release on parole repeatedly, the only reason given for many years has been "the serious nature and circumstances of the crime."[5] J.A. 13.

---

its sentencing position in Bartel Davis' case which attributed the shootings to Boggess Davis.

[4] Davis alleged in his habeas petition that at the time of his sentencing, "Virginia judges . . . were well aware of the availability of parole," and that they "understood and expected" that "prisoners who demonstrated an appropriate level of rehabilitation and suitability for release would serve a greatly reduced portion of their sentences. In 1993 [the year before parole was abolished in Virginia], violent offenders . . . served only 38% of the imposed length of their sentences." J.A. at 21. See note 15, *infra*.

[5] After Davis' case was heard by a parole examiner in 2011, Davis was rejected for release on parole once again, but this time the Board chose to list, in addition to "the serious nature and circumstances of the crime," the additional grounds of "history of violence indicates danger to the community," "extensive criminal record," "risk to the community," and "career in crime until incarcerated." While

Davis alleged below and offered to prove that Virginia has *de facto* abolished parole for persons convicted of most serious crimes. He also claimed that the Parole Board has ignored the Supreme Court's command in *Graham v. Florida*, 560 U.S. 48, 75 (2010), that a juvenile offender who is not the shooter, did not intend death, and did not foresee that a life would be taken must be given a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation."

Of course, the recurrent reference to only the serious nature of Davis' crimes is powerful proof that the Parole Board had rejected "demonstrated maturity and rehabilitation" as a basis for release on parole, considerations the Board has never mentioned. But Davis offered additional indicators that the Board was simply not interested in providing a "meaningful opportunity" for release, even on the basis of his "demonstrated maturity and rehabilitation." These included the allegations, which must be taken as true, that (1) after parole was abolished in Virginia in 1994, the rate of parole grants for those still eligible dropped dramatically; (2) the Virginia General Assembly sought to abolish parole retroactively but concluded that, "regrettably," that was not constitutional; (3) the Board abandoned its risk assessment tool; (4) the Board repealed its rules governing the granting of parole;

---

Davis disputes each of these factors, they are nevertheless all proxies for the same thing—his pre-incarceration past.

4

(5) the Board abandoned its prior practice of face-to-face personal interviews of inmates to inform its decisions; (6) the Board does not meet regularly with its examiners to discuss their findings before acting; and (7) the Board does not seek information from prison wardens, guards, counselors, psychologists, or other DOC employees before passing on an inmate's parole. Davis alleged other facts as well. *Petition For Writ Of Habeas Corpus*, J.A. 20-26.

The district court granted the warden's motion to dismiss Davis' claim based on the state court's dismissal of Davis' state habeas petition.[6]  As quoted by the district court, the state court had found:

> [t]he petition is untimely under Virginia Code Section 8.01-654(A)(2), that *Graham v. Florida* is not applicable . . . that Virginia's abolition of parole under Code Section 53.1-165.1 is not applicable to Davis because he was convicted of his crimes before the abolition of parole in 1995, and that he remains eligible for parole.

Memorandum Opinion at 3, J.A. 264, quoting *Davis v. Warden*, CL-11003537 (Circuit Court for Alexandria, Virginia),  J.A. 94.  Finding the Section 8.01-654(A)(2) basis an independent and adequate state ground, the district court dismissed Davis' claims as "procedurally defaulted from federal habeas review. . . ."  Mem. Op. at 4,  J.A. 265.

---

[6] Davis had filed a state habeas petition concurrently with his federal habeas petition.  At his request, the district court stayed action on the federal petition until the state petition was resolved.  That petition was dismissed by the state trial court and a Petition for Appeal was denied by the Virginia Supreme Court in a terse order.  The district court then took up the present petition.

The district court refused to grant a Certificate of Appealability. Davis sought review of that decision in this Court, and on February 20, 2014, this Court granted a COA. This brief was timely filed.

## Summary of Arguments

Bartel Davis, now 48, has been in prison for 32 years based upon his acts as an immature 16 year-old. For years, the Virginia Parole Board has denied Davis release on parole based solely on the nature of his crime, ignoring precisely what the Supreme Court in *Graham* deemed the crucial, constitutionally mandated focus – Davis' rehabilitation and maturation in prison. Foreswearing the rehabilitative ideal and failing to consider that he is no longer that immature 16-year-old, the Virginia Parole Board has violated Davis' Eighth Amendment rights.

### *The Graham Claim*

*Graham v. Florida* requires that juveniles sentenced to life in prison be afforded a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." The Court mandated such treatment for juveniles based on a host of compelling factors which separate them from adult offenders. Juveniles are less culpable than adults. Their "lack of maturity and underdeveloped sense of responsibility . . . often result in impetuous and ill-considered actions and decisions . . . ." A judgment that a juvenile will forever be

a danger to society, the Court said, is questionable, and a sentence of life without parole "forswears altogether the rehabilitative ideal."

Davis is entitled to *Graham's* embrace.   Though he was convicted of murder, it is undisputed he was not the shooter, nor did he intend death or foresee that a life would be taken.  He was the young brother of the adult who inexplicably and unexpectedly shot the victims, killing one and injuring the other.

While Davis is eligible for release on parole, the fact that the Board repeatedly rejects Davis based solely on the seriousness of his crime, despite his maturity and rehabilitation over the past 32 years, is strong evidence that it is failing to respect *Graham's* command.   Beyond that, Davis alleged numerous indicators that the Board has rejected rehabilitation altogether.  These include the abandonment of a risk-assessment tool, the end of face-to-face interviews with the inmate, the failure to seek input from prison employees, the failure to seek psychological testing, and other failings.  Indeed, counsel is not aware that the Board has *any* procedures in place to evaluate a juvenile offender's rehabilitation or evolving maturity.

### Burnette v. Fahey

*Burnette v. Fahey* does not control this case.  *Burnette* did not raise any claim concerning the Board's abdication of its duty to provide a reasonable opportunity for release to juvenile offenders based on proven maturity and

rehabilitation. None of the *Burnette* plaintiffs were juveniles. The *Burnette* court had no occasion to cite *Graham*. While the plaintiffs in *Burnette* raised Board actions and failures similar to those raised by Davis, they had no occasion to claim that the Board was failing in its duty to properly consider parole for juveniles.

<u>Procedural Default, Cause and Prejudice, and Fundamental Miscarriage of Justice</u>

Davis did not default his claims and the district court erred in finding otherwise. Davis filed his habeas petition within a year of the *Graham* decision, the point at which the Supreme Court first established its Eighth Amendment rule. Moreover, the state court's procedural ruling was not based on an "independent and adequate" state law ground, but necessarily turned on its evaluation of the meaning and effect of *Graham*, a federal question.

In any event, even if defaulted, there was adequate cause and prejudice for the default. Davis could hardly have acted earlier. It took years before Davis could prove that he had both matured and been rehabilitated; it took years before Davis was even eligible for parole; and it took years before Davis could see that the Virginia Parole Board was going to ignore his maturity and rehabilitation. Thus, not only was the factual basis for Davis' claim unavailable earlier, but the legal basis – *Graham* itself – was not available. "Cause" is therefore apparent. "Prejudice" is likewise apparent, since Davis has been denied meaningful

8

opportunity for release by the Parole Board's disregard of the *Graham* directive. Finally, failure to consider Davis' claims would constitute a serious injustice, forever barring Davis from the consideration *Graham* has made available, consigning this matured and rehabilitated 49 year-old man to life in prison for the acts of a 16 year-old.

<u>Argument</u>

I.   The Virginia Parole Board Is Violating *Graham* By  Failing To Afford Davis – A  Juvenile Sentenced To   Life In Prison – A "Meaningful Opportunity To Obtain  Release Based On Demonstrated Maturity And Rehabilitation."

   <u>Standard of Review</u>.  This is a question of law which was not addressed by the district court as a result of its holding that Davis' claim was procedurally barred.  The Court writes on a clean slate.

   A. The Holding in *Graham*

   In *Graham*, the Supreme Court considered the case of a juvenile who had been sentenced to life without parole for a non-homicide offense.  After reviewing the rationales for punishment, including retribution, deterrence, and incapacitation, the Court rejected each as the foundation for such a sentence.  The Court rejected the rationale of "retribution" because a sentence of life without parole for a juvenile non-homicide offender—"the second most severe penalty" after one of death—was deemed disproportional to the crime for juveniles, who are less culpable than adults. 560 U.S. at 71-2.   "Deterrence" was rejected because

juveniles' "lack of maturity and underdeveloped sense of responsibility . . . often result in impetuous and ill-considered actions and decisions . . . [A]ny limited deterrent effect provided by life without parole is not enough to justify the sentence." *Id.* at 72. Finally, the Court rejected "incapacitation" because,

> [t]o justify life without parole on the assumption that the juvenile offender forever will be a danger to society requires the sentencer to make a judgment that the juvenile is incorrigible. The characteristics of juveniles make that judgment questionable. 'It is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.'

*Id.* at 73, quoting *Roper v. Simmons*, 543 U.S. 551, 573 (2005). Beyond that, said the Court,

> [t]he penalty [of life without parole] forswears altogether the rehabilitative ideal. By denying the defendant the right to reenter the community, the State makes an irrevocable judgment about that person's value and place in society This judgment is not appropriate in light of a juvenile nonhomicide offender's capacity for change and limited moral culpability.

*Graham*, 560 U.S. at 75. The Court concluded that "for a juvenile offender who did not commit homicide the Eighth Amendment forbids the sentence of life without parole." *Id.*

10

B. *Graham* Applies To Davis

While the facts of *Graham* led the Court to focus on juvenile offenders who, like Graham, did not commit homicide, the Court's route to that holding makes clear that it is *not* limited to cases where there was no death. Rather, *Graham* applies, as the Court often repeated, to those juvenile offenders "who do not kill, intend to kill, or foresee that life will be taken." 560 U.S. at 69; ("[D]efendants who do not kill, intend to kill, or foresee that life will be taken are categorically less deserving of the most serious forms of punishment than are murderers.") *Id.*; ("It follows that, when compared to an adult murderer, a juvenile offender who did not kill or intend to kill has twice diminished moral culpability. The age of the offender and the nature of the crime each bear on the analysis.") *Id.* It is clear that *Graham* used the term "nonhomicide" as a term of art which included all crimes where death was not intended or foreseen.

The cases cited in the discussion which yielded the language quoted above inform the breadth of the Court's holding. In *Enmund v. Florida*, 458 U.S. 782 (1982), the defendant was a participant in a robbery in which his co-defendant killed the two victims. There was no evidence that the defendant either killed or intended to kill the victims, or that he intended that deadly force be used. The Court held that in such circumstances, the death penalty was unconstitutional:

> The focus must be on his culpability, not on that of those
> who committed the robbery and shot the victims, for we

11

> insist on "individualized consideration as a constitutional requirement in imposing the death sentence," which means that we must focus on "relevant facets of the character and record of the individual offender." Enmund himself did not kill or attempt to kill; and, as construed by the Florida Supreme Court, the record before us does not warrant a finding that Enmund had any intention of participating in or facilitating a murder. . . . Enmund did not kill or intend to kill and thus his culpability is plainly different from that of the robbers who killed; yet the State treated them alike and attributed to Enmund the culpability of those who killed the Kerseys. This was impermissible under the Eighth Amendment.

*Enmund*, 458 U.S. at 798 (citations omitted).

Similarly, in *Tison v. Arizona*, 481 U.S. 137 (1987), the other case cited in *Graham*, the petitioner-brothers planned the escape of their father—imprisoned for the killing of a guard during a previous escape—and entered the prison with a chest of guns. During the escape, the party abducted and robbed a family of four and the brothers watched as their father murdered them with a shotgun. They claimed they were surprised by the killings, though neither made any effort to help the victims, and both continued to aid their father in his escape. The Court held that the brothers' major participation in the crime, along with their reckless indifference for life, if proven, would be sufficient to satisfy the *Enmund* culpability requirement. *Id.* at 158.

*Enmund* and *Tison* were each "homicide" crimes, but that fact did not end the inquiry. Rather, the Supreme Court demanded that where the defendants were

12

not the instrument of death, the sentence of death was not appropriate unless intent to kill or the reckless indifference to life and major participation in the crime were proven: "The Court has recognized that defendants who do not kill, intend to kill, or foresee that life will be taken are categorically less deserving of the most serious *forms* of punishment than are murderers." *Graham*, 560 U.S. at 69 (emphasis added).

It is also useful to recount the facts in *Graham* in order to apply that case to Mr. Davis. At age 16, Graham and three others attempted to rob a restaurant. One of the others, who worked at the restaurant, left the back door unlocked before closing time. Graham and his accomplice entered, wearing masks. The accomplice struck the restaurant manager in the head with a metal bar. When the manager began to yell, Graham and his accomplice fled. Charged for these crimes, the court sentenced Graham to probation and withheld a finding of guilt.

Just six months later, Graham was arrested for participation in a home invasion robbery. He and two accomplices had knocked on the victim's door and then forcibly entered the home. Graham held a pistol to the homeowner's chest. The three then held the homeowner and another hostage for 30 minutes while they ransacked the home searching for money. Before leaving, Graham and his accomplices barricaded the owner and his friend inside a closet. Later that evening, Graham was involved in yet another robbery during which his accomplice

13

was shot.  After taking the accomplice to the hospital, Graham was pursued at high speed by a police officer, crashed his car in the chase, and fled on foot before being caught.  Three handguns were found in his car.  *Graham,* 560 U.S. at 54-5.

Graham was then brought to court on the charge that he had violated the probation previously imposed.  Finding him guilty of the violation, the trial court imposed a sentence of life.  Because Florida had abolished parole, Graham's only possibility of release was the hope of executive clemency.  *Id.*

In the present case, aside from the shooting death of the victim—which resulted from actions by Davis' *brother*, and was both unplanned and unintended by Mr. Davis – the circumstances of Graham's crimes are more egregious than those of Davis.  The salient similarity, however, is that neither Graham nor Davis was a murderer.[7]

---

[7] This meaning of "homicide offense" in the *Graham* context is also informed by the concurring opinion of Justices Breyer and Sotomayer in *Jackson v. Hobbs*, __U.S.__, 132 S.Ct. 2455, 2476-7, the companion case to *Miller v. Alabama*:

"I recognize that in the context of felony-murder cases, the question of intent is a complicated one. The felony-murder doctrine traditionally attributes death caused in the course of a felony to all participants who intended to commit the felony, regardless of whether they killed or intended to kill. * * * But in my opinion, this type of 'transferred intent' is not sufficient to satisfy the intent to murder that could subject a juvenile to a sentence of life without parole. Moreover, regardless of our law with respect to adults, there is no basis for imposing a sentence of life without parole upon a juvenile who did not himself kill or intend to kill. At base, the theory of transferring a defendant's intent is premised on the idea that one engaged in a dangerous felony should understand the risk that the victim of the felony could be killed, even by a confederate. Yet the ability to consider the full consequences of a

14

It is true that Davis was charged with and convicted of murder, and was liable in the eyes of the law for the murder, but only because he was an accomplice in a robbery in which there was a death. *See* Code of Virginia Sec. 18.2-18 ("In the case of every felony, every principal in the second degree and every accessory before the fact may be indicted, tried, convicted and punished in all respects as if a principal in the first degree; . . . ."). As noted above at note 3, the Commonwealth conceded that Davis was not the shooter. His brother took the gun into the home, made the decision to use it, and fled with it.[8]

Finally, it makes no difference that Graham was sentenced to life without parole while Davis is technically eligible for parole. Davis' claim is that the Virginia Parole Board has utterly failed to abide by *Graham* by repeatedly rejecting release on parole for him without any effort to consider, let alone weigh his maturity and rehabilitation over the 32 years of his incarceration.

There is thus no logical reason why *Graham* should not apply to Davis.

---

course of action and to adjust one's conduct accordingly is precisely what we know juveniles lack capacity to do effectively. * * * To apply the doctrine of transferred intent here, where the juvenile did not kill, to sentence a juvenile to life without parole would involve such 'fallacious reasoning.'" (internal citations omitted).

[8] The state court Order dismissing Davis' state habeas petition recounts the facts of the crime, noting that during the robbery, "Boggess Davis intentionally shot Mr. Marston in his back killing him almost instantaneously. Mrs. Richie then observed Boggess Davis raise a large pistol and fire at her." J.A. 96-99.

## C. Davis Has Sufficiently Alleged That The Virginia Parole Board Is Violating *Graham.*

Davis alleged that he was being deprived of a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation," the *Graham* mandate. As persuasive evidence in support of this claim, he cited the fact that he has routinely been denied release on parole based solely on the ground of the serious nature and circumstances of his crime, something which is immutable despite his maturity and rehabilitation.[9] He also alleged a number of indicators that the Virginia Parole Board has turned its back on markers of maturity and rehabilitation. *Supra* at 4. For purposes of evaluation of a motion to dismiss, these facts are assumed to be true. *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009), citing Rule 12(b)(6), Federal Rules of Civil Procedure; *Burnette v. Fahey*, 687 F.3d at 181 ("The allegations with respect to the statistics on parole release and the inmates' histories and experiences with the Board are factual. As such we accept them as true.")

As concerns those who offended as juveniles and are sentenced to life even with the possibility of parole, *Graham* requires an end to business as usual. It is simply not sufficient to deny parole based merely on offense conduct, though certainly that may be one factor. If *Graham* is to mean anything, parole boards

---

[9] As noted, recent, additional grounds for parole denial employ different words only to make the same point.

16

must look deeper than the dismaying circumstances of the crime to see if the passage of years has brought about maturity and rehabilitation. Otherwise, the promise of a "meaningful opportunity" for release based upon those factors is nothing but a pocket full of mumbles.[10] After all, *Graham* requires that the state give juvenile offenders "some *realistic* opportunity" to obtain release prior to the end of the sentence. 560 U.S. at 82. As noted in the recent article *Review for Release: Juvenile Offenders, State Parole Practices, and the Eighth Amendment*, Sarah French Russell, 89 Indiana L.J. 373, 412 (2014):

> [A]n assessment of whether the prisoner has matured and rehabilitated must be central to the release decision. A releasing authority that relies too heavily on the severity of the initial offense in denying release will run afoul of the Eighth Amendment. *Graham* and *Miller* take as a given that the offense is serious. Under *Graham*, a realistic chance of release must be provided even when the offender is convicted if a violent crime . . . . The severity of the crime is taken into account in determining the original sentence – including the date for parole eligibility. Under *Graham* and *Miller*, crime's severity should not influence an assessment of release suitability.

As an example of what is now required of parole boards evaluating offenders who were juveniles when convicted, Professor Russell points to a bill recently considered by the state of Connecticut. That law would instruct the parole board to consider a number of factors, including whether "the offender has

---

[10] *The Boxer*, Simon and Garfunkel ("I am just a poor boy, though my story's seldom told, I have squandered my resistance, for a pocket full of mumbles such are promises, all lies and jest….").

demonstrated remorse and increased maturity since the date of the commission of the crime or crimes."  In addition, the board must consider whether the individual has contributed to the welfare of other persons through service" and made "efforts to overcome substance abuse, addiction, trauma, lack of education or obstacles that such person may have faced as a child or youth in the adult correctional system." See H.B. 6581, 2013 Gen. Assmb., Jan. Sess. (Conn. 2013).  Louisiana has adopted a similar statute.  See La. Rev. Stat Ann. Sec. 15:574.4 (Supp. 2013), attached as an Addendum to this brief.

Davis does not offer these specific legislative remedies as the ideal. Indeed, *Graham* made clear that "[i]t is for the State, in the first instance, to explore the means and mechanisms for compliance." 560 U.S. at 75. These statutes are offered to highlight the complete absence of any similar inquiries by the Virginia Parole Board, which appears to treat juveniles identically to adults.  As such, Virginia's procedures fail to effectuate *Graham*, and along the way, violate the Eighth Amendment.

D. *Burnette v. Fahey* Does Not Address The Specialized Issue Of Parole For Juveniles.

*Burnette v. Fahey*, 687 F.3d 17 (4th Cir. 2012), does not address let alone control the concerns raised in this petition.  *Burnette* did not raise any claim concerning the Board's abdication of its duty to provide a reasonable opportunity for release to juvenile offenders based on proven maturity and rehabilitation.

18

Rather, Burnette alleged a due process claim in a civil rights action. The claim was that "the Board has disregarded its statutory mandate by failing to determine whether a prisoner is suitable for release on parole through an individual analysis of the factors identified in the Policy Manual." *Id.* at 182. None of the *Burnette* plaintiffs were juveniles. The *Burnette* court had no occasion to cite *Graham*. While the plaintiffs in *Burnette* raised Board actions and failures similar to those raised by Davis, they had no occasion to claim that the Board was failing in its duty to properly consider release on parole for juveniles.

Davis' claim, on the other hand, is that because he is a juvenile, the Eighth Amendment demands he be given fair consideration for release on parole based on his "maturity and rehabilitation." Under the Eighth Amendment as interpreted by *Graham*, it is the *substance* of the board's decision which is the focus, not the *procedure* employed.

Indeed, the Court's opinion in *Burnette* – addressing only adult offenders – seems quite at odds with *Graham*. Agreeing with the district court that the plaintiffs there had failed to allege sufficient facts to make out a due process claim, and noting the seriousness of the plaintiffs' crimes, the panel majority said:

> It would be well within the Board's discretion to consider such a prisoner holistically and nevertheless to determine that he or she has not served a sufficiently lengthy sentence in light of the grave crime, nothwithstanding an otherwise clear criminal history and superlative institutional conduct. Although the ultimate result of this decisionmaking process

19

> would be to deny parole based solely on the seriousness of
> the prisoner's crime, the process and decision would
> comply fully with constitutional standards.

686 F.3d at 183. *Graham* however, applying Eighth Amendment standards to juvenile offenders, requires that parole boards not merely fall back on the seriousness of the crime. The seriousness of the crime must yield to demonstrated maturity and rehabilitation. 560 U.S. at 76. "Incapacitation cannot override all other considerations, lest the Eighth Amendment's rule against disproportionate sentences be a nullity." 560 U.S. at 73.

## II.    Davis' Petition Was Timely And Not Procedurally Defaulted

<u>Standard of Review</u>.  This is a question of law to be determined *de novo*.

### A. The Petition, Filed Within A Year Of The Decision In *Graham*, Was Timely.

Virginia requires that a habeas claim must be filed within one year of several triggering events. The State court ruled that Davis' habeas was not timely filed under Code of Virginia Section 8.01-654(A)(2).[11]

---

[11] With respect, this was likely incorrect, though it is also true that the federal courts are not concerned with state court interpretation of state law. Section 8.01-654(A)(2) of the Code of Virginia recognizes an alternative time-limit: "[a] petition for a writ of *habeas corpus ad subjiciendum*, other than a petition challenging a criminal conviction or sentence, shall be brought within one year after the cause of action accrues." This one year limitation has been applied in cases concerning parole eligibility claims. *See, e.g.*, 1-12 *Virginia Criminal Benchbook for Judges and Lawyers*, Section 12.02(1) ("A petition attacking

Here, application of the limitations period is controlled by the fact that Davis' claim was based upon *Graham*, which first established the legal basis for his claim. His claim was filed within one year of the *Graham* decision, thus meeting the Virginia requirement. While the retroactivity of *Graham* on collateral review has not been finally resolved, courts have held it to be retroactive. See for example, *Moore v. Biter*, 725 F.3d 1184 (9th Cir. 2013) ("Both parties agree that *Graham* established a new rule of law that is retroactively applicable on collateral review under *Teague v. Lane*, 489 U.S. 288 (1989."). See also this Court's *per curiam* opinion in *In Re: Ronald Evans*, 449 Fed. Appx. 284 (4th Cir. 2011) ("[A]t oral argument, the Government properly acknowledged that in the appropriate case *Graham* establishes a previously unavailable rule of constitutional law that applies retroactively on collateral review.").

> B. The Petition Was Not Otherwise Procedurally Defaulted Because There Was No "Independent And Adequate" State State Procedural Bar.

The state court held that Davis' habeas petition "is untimely under Virginia Code Sec. 8.01-654(A)(2), that *Graham v. Florida* is not applicable because Davis

---

detention other than by a criminal conviction (e.g., parole denials or revocation) must be filed within one year after the cause of action accrues.") As argued, Davis was not eligible for release on parole for years after sentencing, and even then, was not aware that the Parole Board would continually deny him release on parole without regard to his evolving moral growth and rehabilitation.

was convicted of murder, not a non-homicide crime, that Virginia's abolition of parole under Code Sec. 53.1-165.1 is not applicable to Davis because he was convicted of his crimes before the abolition of parole in 1995, and that he thus remains parole eligible." J.A. 99-100. The district court based its dismissal on the state court's timeliness holding. J.A. 264. But the state court holding was not an independent state procedural ground and thus could not be the basis of a procedural default. The reason for this is that the timeliness of Davis' habeas petition was, and had to be, inextricably linked to the federal question of whether *Graham* applied to Davis.

Specifically, the state court ruled that *Graham* did not apply to juveniles convicted of murder, with no consideration of whether or not they were the instrument of death or intended or foresaw a death. Only by deciding that question (erroneously, as we have argued), could the court then hold that Virginia's statute of limitations had passed, for if the state court found that *Graham* did apply, state law allowed Davis' petition to be filed within a year of the *Graham* decision, which it was. This was thus a *federal constitutional analysis*, not an "independent" state procedural bar. Absent the court's erroneous federal finding, Davis' petition was not time-barred.

A claim is procedurally defaulted only if the state procedural rule is independent of federal law and adequately provides the state court with grounds to

bypass review of federal issues. A purported default that is not independent may be disregarded. See *Michigan v. Long*, 463 U.S. 1032, 1041 (1983). An asserted state ground is not independent if it "fairly appears to rest primarily on federal law, [is] . . . interwoven with the federal law [or when] . . . the adequacy and independence of any possible state law ground is not clear from the face of the opinion . . . ." Here, the state court opinion both relies upon its analysis of G*raham*, and is necessarily intertwined with *Graham*, for the proper computation of the statute of limitations under Virginia law turned on whether *Graham* was a new rule applicable to cases then pending on collateral review, and also whether it applied to juveniles convicted of murder who did not cause the death, intend the death, or foresee the death, clearly federal questions.[12]

Aside from making the factual finding that Davis was not the shooter, more evidence that the state court applied *Graham* (albeit incorrectly) in its timeliness ruling is the fact that the state court rejected the Commonwealth's claim that

---

[12] Compare the situation here to that in *Coleman v. Thompson*, 501 U.S. 722, 662 (1991). At issue there was whether or not the Virginia Supreme Court's dismissal of a habeas petition for failure to meet state timeliness requirements was interwoven with federal law. The Court held that it was not: "Coleman does not argue, nor could he, that it 'fairly appears' that the Virginia Supreme Court's decision rested primarily on federal law or was interwoven with such law. The Virginia Supreme Court stated plainly that it was granting the Commonwealth's motion to dismiss the petition for appeal. That motion was based solely on Coleman's failure to meet the Supreme Court's time requirements. There is no mention of federal law in the Virginia Supreme Court's three-sentence dismissal order. It 'fairly appears' to rest primarily on state law."

Davis' petition should be rejected because it was a successor petition. See Circuit Court Order, J.A. 100.[13]  Davis had filed a habeas petition in 1984 raising ineffectiveness of counsel and other claims related to his conviction and sentencing. *Id*., J.A. 95-96. In the state court, the Respondent (here the appellee), argued that the new *Graham* claim was successive since it was factually and legally available at the time Davis filed his initial habeas petition three decades ago.[14] Since the state court specifically found that *Graham* did not apply to Davis, it's ruling that Davis' new petition was non-successive necessarily rested on a determination that the factual basis of his claim was previously unavailable to him and thus was *not* based on an independent state law analysis.

Beyond that, the nature of Davis' claim is such that he will suffer a new Eighth Amendment violation every year so long as the Parole Board forecloses a realistic opportunity for release by ignoring maturity and rehabilitation and considering only the serious nature of the offense.

---

[13] "Additionally, the Court is of the opinion that the present petition is not successive to the petition filed on January 5, 1984 under Code of Virginia Sec. 8.01-654(B)(2)."

[14] The respondent/appellee argued: "Davis's habeas petition is further barred by Code Sec. 8.01-654(B)(2) because it is successive to the one filed in this Court on January 5, 1984. . . . Of course, *Graham* is not applicable and, that Davis was a juvenile when he committed murder as a principal in the second degree and sentenced to a life term, were facts plainly available to Davis at the time he filed his first habeas petition in 1984."   Respondent's Motion to Dismiss, Case No. CL1003537, Circuit Court for the City of Alexandria, Virginia." J.A. 185.

C. Even If Defaulted, There Was Both Cause For And Prejudice From Davis' Failure To File Within The State Limitations Period.

A petitioner may avoid the harsh effect of procedural default if he can show both cause for his failure to comply with a state procedural rule, and prejudice as a result. If he was in default, Davis can show both cause and prejudice.

In procedural default cases, the "cause" standard requires the petitioner to show that "some objective factor external to the defense impeded counsel's efforts to comply with the state procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Objective factors can include "a showing that the factual or legal basis for a claim was not reasonably available to counsel." *Id*; *Rose v. Lee*, 252 F.3d 676, 687 (4th Cir. 2001) (cause may be established by showing that the factual basis for the claim was unavailable). Here, the reason Davis was not able to file his state habeas petition within one year of his conviction becoming final was that he was not even technically "eligible" for release on parole until well past the limitation period[15], though of course we allege he is *de facto not* eligible for release on

---

[15] See Code of Virginia Section 53.2-251(C) ("Eligibility for Parole"):

Any person sentenced to life imprisonment for the first time shall be eligible for parole after serving fifteen years, except that if such sentence was for a Class 1 felony violation or the first degree murder of a child under the age of eight in violation of § 18.2-32, he shall be eligible for parole after serving twenty-five years, unless he is ineligible for parole pursuant to subsection B1 or B2.

parole. Even then, the hopelessness of his situation did not become manifest until years of repeated parole denials based on the "nature and circumstances of the offense." Davis had no claim to make until it became apparent that he was being denied the consideration which *Graham* has now mandated. Thus, not only was the *factual* basis for Davis' claim unavailable (his evolving maturity and rehabilitation; the persistent refusal of the Parole Board to concern itself with anything other than the seriousness of the crime), but the *legal* basis for the claim was likewise unavailable – *Graham* had not yet been decided.

In *Jennings v Parole Board of Virginia*, 34 F. Supp. 2d 375, (ED Va. 1999), the court faced a similar problem. Jennings was serving a life sentence for murder. He sought state habeas relief, arguing that the Virginia Parole Board's procedures were unconstitutionally defective for finding him unsuitable for release on parole based upon "boiler plate" justifications, and other claims. The Virginia Supreme Court held the claims to be procedurally barred because the petitioner had knowledge of the facts at the time of a previously filed habeas yet failed to raise them. 34 F. Supp. 2d at 380.

The district court found that that the state had properly relied upon a state procedural bar and further, that the state court ruling was an independent and adequate state ground. That did not end the matter, however:

> [I]t further appears that all of the procedurally barred claims relate to the *validity of the petitioner's conviction* and not to

26

any claims relating to parole, *which claims could not have been asserted at the time of petitioner's prior petitions*. Thus, although the finding of the Supreme Court of Virginia would ordinarily bar federal review, it is insufficient to do so here. In these circumstances, there is no bar to federal review because a miscarriage of justice would result from a lack of federal review. [footnote omitted]. See *Coleman [v. Thompson]*, 501 U.S. at 722, 111 S. Ct. 2546 (holding that the procedural bar does not prohibit federal habeas review id the failure to consider the claims would result in a fundamental miscarriage of justice.); *Harris v. Reed*, 489 U.S. 255, 109 S. Ct. 1038, 103 L.Ed.2d 308 (1989); *Murray v. Carrier*, 477 U.S. 478, 106 S. Ct. 2639, 91 L.Ed.2d 397 (198); *Wainwright v. Sykes*, 433 U.S. 72, 97 S. Ct. 2497, 53 L.Ed.2d 594 (1977); *Savino v. Murray*, 82 F.3d 593 (4th Cir. 1996). Procedurally barring a claim that could not have been raised in an earlier petition is both manifestly unjust and contrary to the policy underlying the procedural bar, namely preventing habeas petitioners from filing successive petitions asserting claims that could have been raised in previous petitions.

34 F. Supp. 2d at 381 (emphasis added).

As to the unavailability of the legal basis for the claim, the rule in *Graham* was not previously available. *Murray v. Carrier, supra.* ("the legal basis for a claim was not reasonably available to counsel.") *In re Sparks*, 657 F.3d 258 (5th Cir., 2011) provides an apt example. There, the petitioner sought leave from the Court of Appeals to file a successive habeas petition challenging his life-without-parole sentence imposed when he was 16 years old. Under Title 28 U.S.C. Sec. 2255(h), a federal prisoner is barred from filing such a successive petition unless (under one exception) the claim is premised upon a "new rule of constitutional law

made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." Applying the principles set forth in *Tyler v. Cain*, 533 U.S. 656 (2001), the Fifth Circuit held that the rule in *Graham* was such a rule and allowed the successive petition which would otherwise have been barred to be filed. That *Graham* established a new rule confirms that the legal basis of Davis' claim was previously unavailable.

*Sparks* merely applied the longstanding rule in *Teague v. Lane*, 489 U.S. 288 (1989) (plurality opinion), establishing exceptions to the rule of non-retroactivity for cases no longer on direct appeal. New rules will apply to petitioners seeking collateral relief if the new rule places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." 489 U.S. at 307. In *Penry v. Lynaugh*, 492 U.S. 302, 330 (1989), the Court explained that language, noting that the exception extends "not only [to] rules forbidding criminal punishment of certain primary conduct but also rules *prohibiting a certain category of punishment for a class of defendants because of their status or offense*." (Emphasis added). This is precisely what *Graham* did.

The prejudice prong of the "cause and prejudice" exception is easily established. In order to demonstrate "prejudice," the petitioner must demonstrate that the errors "worked to his actual and substantial disadvantage." *United States v. Frady*, 456 U.S. 152, 170 (1982). Clearly, Davis has been disadvantaged. He is

28

denied meaningful consideration for release on parole – a right as a juvenile offender to which he is entitled under the 8th Amendment.

### D. Barring Davis' Claim Results In A Fundamental Miscarriage Of Justice.

A state procedural bar may also be overcome if a constitutional violation has probably resulted in the conviction of one who is actually innocent of the substantive offense. *Dretke v. Haley*, 541 U.S. 386 (2004). "Actual innocence" means different things in different contexts. In the capital punishment context, a petitioner can show "actual innocence" if he can show by clear and convincing evidence that, but for the constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law. *Id*. at 393.

A sentence of life without the possibility of parole is the second most severe sentence the criminal law can impose, and it is now clear that a sentence of life without parole for a juvenile is akin to a death sentence. Life without parole terms "share some characteristics with death sentences that are shared by no other sentences." *Graham*, 560 U.S. at 69, quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991). In *Miller v. Alabama,* __U.S.__, 132 S.Ct. 2455, 2466 (2012), the Court said:

> Imprisoning an offender until he dies alters the remainder of his life "by a forfeiture that is irrevocable." *Graham*, 130 S.Ct. at 2027,

> citing *Solem v. Helm*, 463 U.S. 277, 300-301 (1983). And this lengthiest possible incarceration is an "especially harsh punishment for a juvenile," because he will almost inevitably serve "more years and a greater percentage of his life in prison than an adult offender. *Graham*, 560 U.S. at __, 130 S.Ct. at 2028. . . . All of that suggested a distinctive set of legal rules: In part because we viewed the ultimate penalty for juveniles as akin to the death penalty, we treated it similarly to that most severe punishment. We imposed a categorical ban on the sentence's use, in a way unprecedented for a term of imprisonment.

Given this, Davis believes that his case falls under the fundamental miscarriage of justice exception, something clear and convincing on its face.

Notwithstanding the above, as *Jennings v. Parole Board of Virginia*, *supra*, makes clear, a failure to address the constitutional shortcomings of the Virginia Parole Board's evaluation of juveniles, rendering them ineligible for *Graham's* escape valve, is fundamentally unfair. "Procedurally barring a claim that could not have been raised in an earlier petition is . . . manifestly unjust." 34 F. Supp. 2d at 381.

## CONCLUSION

Davis asks this Court to rule that the decision of the United States Supreme Court in *Graham* applies to him; to reverse the district court's dismissal of his habeas petition; and to order a full evidentiary hearing.

> Respectfully Submitted,
> BARTEL DAVIS
> By Counsel

Counsel for the Appellant:

/s/ Jonathan Shapiro
Jonathan Shapiro                                Meghan Shapiro *On Brief*
Director                                               Louisiana Capital Assistance
Washington and Lee University Law            Center
    School Innocence Project              636 Baronne Street
1 Denny Circle                                      New Orleans, LA  70113
Lexington, Virginia   24550                   (703) 915-9594
(540) 458-8503                                    shapiro.meghan@gmail.com
shapiroj@wlu.edu

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Appellant's Brief contains a total of 7,897 words in Roman-style font, exclusive of the Table of Authorities, Table of Contents, Certificates and Addendum.

                                    /s/ Jonathan Shapiro
                                      Jonathan Shapiro

## CERTIFICATE OF SERVICE

    I hereby certify that true copies of the APPELLANT'S BRIEF and JOINT APPENDIX, were filed with the Clerk, United States Court of Appeals for the Fourth Circuit via hand delivery and electronically using the Court's CM/ECF system which will send notification of such filing to:

March 28, 2014

                                      /s/ Jonathan Shapiro
                                      Jonathan Shapiro

ADDENDUM

Excerpt from La. Rev. Stat Ann. Sec. 15:574.4 (Supp. 2013)

\*   \*   \*

E.  (1) Notwithstanding any provision of law to the contrary, any person serving a sentence of life imprisonment for a conviction of first degree murder (R.S. 14:30) or second degree murder (R.S. 14:30.1) who was under the age of eighteen years at the time of the commission of the offense shall be eligible for parole consideration pursuant to the provisions of this Subsection if a judicial determination has been made that the person is entitled to parole eligibility pursuant to Code of Criminal Procedure Article 878.1 and all of the following conditions have been met:

- o  (a)  The offender has served thirty-five years of the sentence imposed.
- o  (b)  The offender has not committed any disciplinary offenses in the twelve consecutive months prior to the parole eligibility date.
- o  (c)  The offender has completed the mandatory minimum of one hundred hours of prerelease programming in accordance with R.S. 15:827.1.
- o  (d)  The offender has completed substance abuse treatment as applicable.
- o  (e)  The offender has obtained a GED certification, unless the offender has previously obtained a high school diploma or is deemed by a certified educator as being incapable of obtaining a GED certification due to a learning disability. If the offender is deemed incapable of obtaining a GED certification, the offender shall complete at least one of the following:
  - ▪  (i)  A literacy program.
  - ▪  (ii)  An adult basic education program.
  - ▪  (iii)  A job skills training program.
- o  (f)  The offender has obtained a low-risk level designation determined by a validated risk assessment instrument approved by the secretary of the Department of Public Safety and Corrections.
- o  (g)  The offender has completed a reentry program to be determined by the Department of Public Safety and Corrections.
  - ▪  (2)  For each offender eligible for parole consideration pursuant to the provisions of this Subsection, the board shall meet in a

32

three-member panel, and each member of the panel shall be provided with and shall consider a written evaluation of the offender by a person who has expertise in adolescent brain development and behavior and any other relevant evidence pertaining to the offender.

- (3)  The panel shall render specific findings of fact in support of its decision.

\*  \*  \*